**UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION**

TAMIKA REESE,

      Petitioner,

v.                                                          Case No. 4:19-cv-401-MW-MJF

MARK INCH,

      Respondent.

_____/

## REPORT AND RECOMMENDATION

      Petitioner Tamika Reese has filed a petition for writ of habeas corpus under 28 U.S.C. § 2254. (Doc. 1). Respondent ("the State") answered, providing relevant portions of the state court record. (Doc. 17). Reese filed a reply. (Doc. 19). The undersigned concludes that no evidentiary hearing is required for the disposition of this matter, and that Reese is not entitled to habeas relief.[1]

---

[1] The District Court referred this case to the undersigned to address preliminary matters and to make recommendations regarding dispositive matters. *See* N.D. Fla. Loc. R. 72.2(B); *see also* 28 U.S.C. § 636(b)(1)(B), (C); Fed. R. Civ. P. 72(b).

## I. Background and Procedural History[2]

At 8:00 a.m. on January 15, 2013, Reese and her co-defendant, Korshan Williams, entered the apartment of two Florida State University students, Chadrick Bowers and Maxence Doytier. Reese and Williams were there to steal marijuana. Reese was armed with a gun, and Williams was armed with a hammer.

Doytier was preparing for class when Reese and Williams entered the apartment. When he saw the pair, he initially was not alarmed because he assumed they were Bowers's friends. After Reese pointed her gun at him, Doytier realized he was mistaken.

Williams told Doytier to "hush," and Reese ordered Doytier to the floor. Reese and Williams "zip-tied" Doytier's hands, bound his feet with electrical cord, and pulled down his head wrap to cover his eyes. Williams and Reese asked Doytier if Bowers was in the apartment, and Doytier responded that Bowers was upstairs. Williams went upstairs.

Reese got a knife from the kitchen and began whispering to Doytier, asking him where the money and marijuana was. As Reese questioned Doytier, she raked

---

[2] The facts are drawn from the evidence presented at trial, viewed in the light most favorable to the State. (Doc. 17, Exs. 3-5 (Trial Tr.)); *see also Jackson v. Virginia*, 443 U.S. 307 (1979).

the knife down his back, drawing blood. Doytier responded that he did not know what she was talking about. Reese left Doytier on the floor and went upstairs.

Doytier freed himself, got a pan from the kitchen, and prepared to defend himself. Reese came downstairs, rushed to the kitchen, and started fighting with Doytier. Reese yelled to Williams for help, and Williams joined the fray. Reese stepped back as Doytier and Williams continued to fight. Doytier grabbed Williams's hammer and hit him square on the ear. The blow intensified the fight. Williams grabbed Doytier's shirt and hair and yelled to Reese, "shoot him, shoot him!" Reese shot Doytier, wounding his left arm. Reese then fled the apartment. Doytier and Williams continued to struggle. Williams eventually fled, but left his bandana behind. Law enforcement traced DNA on the bandana to Williams. Doytier identified Reese and Williams as his assailants from a photographic lineup.[3]

Williams testified at Reese's trial. Williams acknowledged his participation in the crimes. Williams explained that he and Reese initially planned to buy marijuana at the apartment, but then decided to steal it instead. Reese armed herself with a pistol. Williams described binding Doytier before going upstairs. Williams found Bowers upstairs, held him down by pressing the hammer onto his head, and

---

[3] Doytier also identified Reese at trial as the shorter of the two burglars who bound him, held him on the floor, jabbed the knife into his back while demanding money and marijuana, fought him in the kitchen, and shot him.

demanded marijuana. When Williams heard Reese yell for help, he grabbed the marijuana and went downstairs. Williams testified that Reese shot Doytier while he and Doytier were fighting.

Reese and Williams were charged in Leon County Circuit Court Case No. 2013-CF-2276, with seven crimes: Burglary of a Dwelling with Person Assaulted (Count I); Armed Robbery of Bowers with a Firearm (Count II); Attempted Armed Robbery of Doytier with a Firearm (Count III); False Imprisonment of Doytier by Use of a Firearm (Count IV); Aggravated Battery of Doytier with a Firearm (Count V); Aggravated Battery of Bowers with a Firearm (Count VI); and Possession of a Firearm by a Convicted Felon (Count VII). (Doc. 17, Ex. 1 (Am. Information)).[4]

On May 8-9, 2014, Reese was tried on Counts I-VI. (Exs. 3-5).[5] In response to a defense motion for judgment of acquittal ("JOA"), the State conceded that the Armed Robbery of Bowers charged in Count II should be reduced to a charge of Robbery. (Ex. 5 at 4-7). The State also conceded that the Aggravated Battery of Bowers with a Firearm, charged in Count VI, should be amended to Aggravated Battery with a Deadly Weapon. (*Id*.). The trial court agreed and reduced the charge

---

[4] Citations to the state court record are to the electronically filed exhibits attached to the State's answer. (Doc. 17). Citation to a particular page of an exhibit is to the page number assigned by the court's Electronic Case Filing system ("ECF").

[5] Count VII was bifurcated for trial purposes.

on Count II to Robbery, amended the charge on Count VI to Aggravated Battery with a Deadly Weapon, and denied the motion for JOA in all other respects. (Ex. 5 at 7-8). The jury found Reese guilty as charged of Counts I-V, and guilty of the lesser-included offense of Battery on Count VI. (Ex. 5 at 131-33). After the verdict was read, Reese pled *nolo contendere* to Count VII. (*Id*. at 133-36).

The trial court adjudicated Reese guilty and sentenced her to imprisonment for life as a prison releasee reoffender for the burglary, and concurrent sentences ranging from time-served to 25 years of imprisonment for the remaining offenses. Judgment was rendered on May 19, 2014. (Ex. 6 (J. and Sentence)).[6]

Reese appealed to the Florida First District Court of Appeal ("First DCA"). Appellate counsel filed an *Anders*[7] brief. (Ex. 7). The First DCA authorized Reese to file a *pro se* initial brief. (Ex. 8). Reese did not file a *pro se* brief, however. The First DCA affirmed the judgment on December 27, 2016, *per curiam* without written opinion. *Reese v. State*, 229 So. 3d 323 (Fla. 1st Dist. Ct. App. 2016) (Table) (copy at Ex. 9).

---

[6] On August, 11, 2016, the judgment and sentence was amended, *nunc pro tunc* to May 19, 2014, to remove the PRR designation from Reese's sentence for False Imprisonment (Count IV). (Ex. 15 at 25-36 (Am. J. and Sentence)).

[7] *Anders v. California*, 386 U.S. 738 (1967).

On December 1, 2017, Reese filed a *pro se* motion for postconviction relief under Florida Rule of Criminal Procedure 3.850. (Ex. 10). The state circuit court summarily denied the motion on the merits. (Ex. 15). On June 12, 2019, the First DCA affirmed in a written opinion. *Reese v. State*, 274 So. 3d 527 (Fla. 1st Dist. Ct. App. 2019) (copy at Ex. 20). The mandate issued July 10, 2019. (Ex. 20 at 7).

Reese filed her federal habeas petition on August 15, 2019. (Doc. 1). Reese's petition raises eight claims. The State asserts that all of Reese's claims are procedurally defaulted and without merit. (Doc. 17).

## II.  THE STATE'S PROCEDURAL DEFAULT DEFENSE

The State asserts that all eight of Reese's claims are procedurally defaulted. The State argues that (1) Reese never presented her claim of trial court error (Ground One) to the state courts; and (2) Reese failed to invoke one complete round of Florida's established appellate review process for her claims of ineffective assistance of trial counsel (Grounds Two-Eight). (Doc. 17). Reese responds that her claims were fairly presented and properly exhausted in the state courts. (Doc. 19).

## A.  <u>Federal Habeas Exhaustion Requirement</u>

Before seeking federal habeas relief under § 2254, the petitioner must exhaust all available state court remedies for challenging her conviction, 28 U.S.C. § 2254(b)(1), thereby giving the State the "'opportunity to pass upon and correct'

alleged violations of its prisoners' federal rights." *Duncan v. Henry*, 513 U.S. 364, 365 (1995) (quoting *Picard v. Connor*, 404 U.S. 270, 275 (1971)). To satisfy the exhaustion requirement, the petitioner must fairly present her federal claim to the state's highest court, either on direct appeal or on collateral review. *Castille v. Peoples*, 489 U.S. 346, 351 (1989); *see O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999) ("[S]tate prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process.").

When a petitioner fails to exhaust her claim and the state court remedy is no longer available, that failure to exhaust is a procedural default. *O'Sullivan*, 526 U.S. at 839-40; *see also Bailey v. Nagle*, 172 F.3d 1299, 1303 (11th Cir. 1999) (holding that when a petitioner fails to properly exhaust a federal claim in state court, and it is obvious that the unexhausted claim now would be procedurally barred under state law, the claim is procedurally defaulted). A petitioner seeking to overcome a procedural default must "demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claim[ ] will result in a fundamental miscarriage of justice." *Coleman v. Thompson*, 501 U.S. 722, 750 (1991).

**B.**    **Reese's Claim of Trial Court Error Is Procedurally Defaulted**

Reese's first ground for relief claims that the trial court violated her rights under the Sixth and Fourteenth Amendments when the court denied her request for a special jury instruction on Williams's substantial assistance. (Doc. 1 at 5-5A). Reese's proposed instruction read:

> Ladies and Gentlemen of the jury, I further instruct you that Section 921.186, Florida Statutes, provides as follows:
>
> Notwithstanding any other law, the state attorney may move the sentencing court to reduce or suspend the sentence of any person who is convicted of violating any felony offense and who provides substantial assistance in the identification, arrest, or conviction of any of that person's accomplices, accessories, coconspirators, or principals or of any other person engaged in criminal activity that would constitute a felony. The arresting agency shall be given an opportunity to be heard in aggravation or mitigation in reference to any such motion. Upon good cause shown, the motion may be filed and heard in camera. The judge hearing the motion may reduce or suspend the sentence if the judge finds that the defendant rendered such substantial assistance.

(Doc. 17, Ex. 2). Reese asserts that she raised this claim in her direct appeal. (Doc. 1 at 5).

The State asserts that this claim is not cognizable on federal habeas review because Reese does not explain how the denial of the instruction violated the Constitution. (Doc. 17 at 30). In the alternative, the State asserts that this claim is procedurally defaulted because Reese did not present it in her direct appeal. (*Id*. at 30-31).

The only brief filed in Reese's direct appeal was appellate counsel's *Anders* brief. (Ex. 7). The *Anders* brief stated that counsel "could find no meritorious argument to support the contention that the trial court committed significant reversible error," and that the appeal was frivolous. (Ex. 7 at 14-15 in ECF). Notwithstanding, counsel identified the following as a "possible appealable issue:"

> Whether the trial court erred in not giving the defense's requested instruction on substantial assistance.

(*Id*. at 15).

The only legal standard counsel identified was Florida's abuse of discretion standard. (*Id*.) (citing *Stephens v. State*, 787 So. 2d 747, 755 (Fla. 2001)). The entirety of counsel's argument read:

> In order to be entitled to a special jury instruction, the defendant must prove: (1) the special instruction was supported by the evidence; (2) the standard instruction does not adequately cover the defendant's theory of the case; and (3) the proposed instruction accurately states the law and would not confuse or mislead the jury. [*Stephens*, 787 So. 2d] at 756.
>
> The requested jury instruction went to the heart of Williams' credibility. It is clear that the jury had some concern about Williams' testimony, as it requested a copy of the testimonial transcript. Therefore, it is possible that had the requested instruction been given, the jury could have had a different decision—including that of not guilty—on any one or all of the numerous charges. Thus, it is possible that the lower court abused its discretion in denying the request for the requested instruction and forcing the defense to rely solely upon the standard instruction regarding consideration of the witnesses (which was given; R. 78, T. 324).

(Ex. 7 at 15-16). The First DCA affirmed without written opinion.

"[F]ederal courts require a petitioner to present [her] claims to the state court 'such that a reasonable reader would understand each claim's particular legal basis and specific factual foundation.'" *French v. Warden, Wilcox State Prison*, 790 F.3d 1259, 1270 (11th Cir. 2015) (quoting *Kelley v. Sec'y Dep't of Corr.*, 377 F.3d 1317, 1344-45 (11th Cir. 2004)). "The ground relied upon must be presented face-up and squarely; the federal question must be plainly defined." *Kelley*, 377 F.3d at 1345.

It is clear that Reese's briefing of the jury instruction issue on direct appeal did not meet this threshold. The *Anders* brief did not allege a federal constitutional claim. It asserted instead that the trial court erred as a matter of state law. The *Anders* brief did not mention the Constitution, any provision of federal law, or any federal standard. Reese claimed only that she satisfied the state-law standard for receiving the instruction. (*Id*. at 14-16).

Because Reese did not fairly present a federal constitutional claim to the First DCA in her direct appeal, her present federal claim concerning the jury instruction is unexhausted and procedurally defaulted. *See, e.g., French*, 790 F.3d at 1270-71 (holding that habeas petitioner did not fairly present his Sixth Amendment Confrontation Clause claim to the state court in his direct appeal; petitioner's appellate brief cited only state law and discussed Georgia's specific procedure for

Page 10 of 48

admitting evidence of prior false allegations; petitioner's bare mention of the word "confrontation" was insufficient); *see also Lambrix v. State*, 559 So. 2d 1137, 1138 (Fla. 1990) (stating that a claim of error "based on information which was contained in the original record of the case . . . must be raised on direct appeal.").

Reese has made none of the requisite showings to excuse her procedural default.[8] Reese's procedural default bars habeas review of Ground One.

## C.   The State Has Not Established that Reese's Claims of Ineffective Assistance of Trial Counsel Are Procedurally Defaulted

Reese's remaining seven grounds for relief claim that trial counsel was ineffective for: (1) failing to call an alibi witness (Ground Two); (2) failing to conduct a reasonable investigation into mitigation evidence (Ground Three); (3) failing to impeach Williams's credibility (Ground Four); (4) failing to impeach Doytier's credibility (Ground Five); (5) failing to raise a double jeopardy challenge to Counts V and VI (Ground Six); and (6) failing to move for a mistrial due to a sleeping juror (Ground Seven). (Doc. 1 at 10-23). Reese's final ground for relief is

---

[8] Reese cannot claim that her appellate counsel's ineffective assistance was the cause for her failure to raise a federal constitutional claim on direct appeal because she did not present an ineffective assistance of appellate counsel claim to the state courts as an independent claim. *Edwards v. Carpenter*, 529 U.S. 446, 447 (2000) ("The comity and federalism principles underlying the doctrine of exhaustion of state remedies require an ineffective-assistance claim to be presented to the state courts as an independent claim before it may be used to establish cause for a procedural default.").

a cumulative error claim based on the preceding grounds of ineffective assistance of counsel (Ground Eight). (*Id*. at 25).

The State asserts that all of these claims are procedurally defaulted because Reese failed to complete one full round of Florida's established appellate review process. (Doc. 17 at 31-42). The State explains that the First DCA's issuance of a written opinion in Reese's postconviction appeal provided her the opportunity to seek further review in the Florida Supreme Court. (*Id*. at 31, 33-35, 37, 39-40). In support, the State cites Article 5, Section 3(b) of the Florida Constitution, and two Florida Supreme Court cases clarifying the types of cases over which it *lacks* discretionary jurisdiction under Article V, Section 3(b)(3). (*Id*. at 31) (citing *Jollie v. State*, 405 So. 2d 418, 421 (Fla. 1981); *Jenkins v. State*, 385 So. 2d 1356, 1359 (Fla. 1980)). The State concludes that "[b]y not affording the Florida courts the opportunity to address her claim by completing one full round of the state's appellate process, *O'Sullivan v. Boerckel*, 527 U.S. at 845, 119 S. Ct. at 1732, Petitioner cannot now proceed." (Doc. 17 at 31-32).

Article V, Section 3(b), of the Florida Constitution governs the jurisdiction of the Florida Supreme Court. *See Wells v. State*, 132 So. 3d 1110, 1112 (Fla. 2014). The State's procedural default defense relies on caselaw interpreting Article V, Section 3(b)(3). That provision provides, in relevant part:

Page 12 of 48

**(b) Jurisdiction**.—The supreme court:

(3) May review any decision of a district court of appeal that expressly declares valid a state statute, or that expressly construes a provision of the state or federal constitution, or that expressly affects a class of constitutional or state officers, or that expressly and directly conflicts with a decision of another district court of appeal or of the supreme court on the same question of law.

Fla. Const. art. V, § 3(b)(3).

In *Wells*, the Florida Supreme Court summarized its decisions concerning the limits of its jurisdiction under Section 3(b)(3), including *Jenkins* and *Jollie*:

[B]ased on our case law since *Jenkins*, it is clear that we have explicitly held that this Court lacks discretionary review jurisdiction over the following four types of cases: (1) a per curiam affirmance rendered without written opinion—*see Jenkins*, 385 So. 2d at 1359; (2) a per curiam affirmance with a citation to (i) a case not pending review or a case that has not been quashed or reversed by this Court, (ii) a rule of procedure, or (iii) a statute—*see Dodi Publishing* [*Co. v. Ed. Am., S.A.*], 385 So. 2d [1369,] 1369 [(Fla. 1980)], and *Jollie*, 405 So. 2d at 421; (3) a per curiam or other unelaborated denial of relief rendered without written opinion—*see Stallworth* [*v. Moore*], 827 So. 2d [974,] 978 [(Fla. 2002)]; and (4) a per curiam or other unelaborated denial of relief with a citation to (i) a case not pending review or a case that has not been quashed or reversed by this Court, (ii) a rule of procedure, or (iii) a statute—*see Gandy* [*v. State*], 846 So. 2d [1141,] 1144 [(Fla. 2003)].

*Wells*, 132 So. 3d at 1113. The First DCA's opinion in Reese's postconviction appeal does not fall within any of these categories because the First DCA affirmed in a 6-page written opinion. *Reese v. State*, 274 So. 3d 527 (Fla. 1st Dist. Ct. App. 2019) (copy at Ex. 20).

Page 13 of 48

The State maintains that the existence of a written opinion—in and of itself—brought Reese's case within the discretionary jurisdiction of the Florida Supreme Court. The State does not identify a *particular jurisdictional basis*, under Article V, Section (b)(3), for the supreme court's discretionary jurisdiction.

The Florida Supreme Court's recent opinion in *Mallet v. State*, 280 So. 3d 1091 (Fla. 2019), provides guidance on this issue. In *Mallet*, a Florida prisoner filed a notice to invoke the discretionary jurisdiction of the Florida Supreme Court after the First DCA affirmed, with a written opinion, the denial of postconviction relief. *Id*. at 1092. Mallet's brief identified Article V, Section (b)(3) of the Florida Constitution as the jurisdictional basis for review and stated that the First DCA's decision "expressly and directly conflicts with the decision of another district court of appeal or the Florida Supreme Court." *Id*. Mallet, however, did not identify a conflict case. *Id*. Mallet explained, though, that his case presented federal issues, citing *O'Sullivan v. Boerckel*, 526 U.S. 838 (1999). *Mallet*, 280 So. 3d at 1092.

The Florida Supreme Court denied review for lack of jurisdiction. The court discussed the federal habeas exhaustion requirement as developed in *O'Sullivan*, and distinguished Florida's appellate review procedure from the state procedure at issue in *O'Sullivan* (Illinois's appellate review procedure). The Florida Supreme Court explained:

In *O'Sullivan*, the United States Supreme Court addressed the doctrine that "[b]efore a federal court may grant habeas relief to a state prisoner, the prisoner must exhaust his remedies in state court." 526 U.S. at 842, 119 S. Ct. 1728. "The particular question posed [in *O'Sullivan*] is whether a prisoner must seek review in a state court of last resort *when that court has discretionary control over its docket*." *Id*. at 843, 119 S. Ct. 1728 (emphasis added).FN1

> FN1 The federal exhaustion doctrine does not require state prisoners "to invoke extraordinary remedies when those remedies are alternatives to the standard [appellate] review process and where the state courts have not provided relief through those remedies in the past." *O'Sullivan*, 526 U.S. at 844, 119 S. Ct. 1728 (citing *Wilwording v. Swenson*, 404 U.S. 249, 249-250, 92 S. Ct. 407, 30 L.Ed.2d 418 (1971)).

> . . . .

> We fail to see the relevance of *O'Sullivan* to the question of our jurisdiction to review the First District's opinion in Mallet's case. First, of course, our jurisdiction is established by the Florida Constitution, not by federal law. And, second, unlike the Illinois Supreme Court, which "has the opportunity to *decide* which cases it will consider on the merits," *id*. at 846, 119 S. Ct. 1728, we do not. Art. V, § 3(b), Fla. Const.

*Id*. at 1092-93, 1093 n.1. The court concluded: "Because Mallet's jurisdictional initial brief fails to identify a jurisdictional basis for this Court to consider his case, we deny Mallet's petition for review." *Id*. at 1093.

The *Mallet* decision dispels the notion that the State advances here—that the Florida Supreme Court has discretionary jurisdiction to review a case whenever a district court of appeal issues a written opinion. Based on the Florida Supreme Court's clarification of its jurisdiction in *Mallet*, it appears that Reese could *not* have

sought to invoke the Florida Supreme Court's discretionary jurisdiction *unless she identified a jurisdictional basis*, for example, a conflict case. The State does not identify a jurisdictional basis available to Reese. A jurisdictional basis does not appear from the First DCA's opinion itself.

On this record, and in light of the Florida Supreme Court's clarifying opinion in *Mallet*, this court cannot conclude that Reese "ha[d] 'the right . . . to raise' [her] claims through a petition for discretionary review in [the Florida Supreme Court]." *O'Sullivan*, 526 U.S. at 845 (quoting 28 U.S.C. § 2254(c)). Reese's ineffective assistance of counsel claims appear to be exhausted.

### III. REESE'S INEFFECTIVE ASSISTANCE OF TRIAL COUNSEL CLAIMS

### A. Relevant Legal Standards

### 1. *Section 2254 Standard of Review*

A federal court "shall not" grant a habeas corpus petition on any claim that was adjudicated on the merits in state court unless the state court's decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court." 28 U.S.C. § 2254(d)(1). The United

States Supreme Court explained the framework for § 2254 review in *Williams v. Taylor*, 529 U.S. 362 (2000).[9] Justice O'Connor described the appropriate test:

> Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts.  Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

529 U.S. at 412-13 (O'Connor, J., concurring).

Under the *Williams* framework, the federal court must first determine the "clearly established Federal law," namely, "the governing legal principle or principles set forth by the Supreme Court at the time the state court render[ed] its decision." *Lockyer v. Andrade*, 538 U.S. 63, 71-72 (2003). After identifying the governing legal principle, the federal court determines whether the state court's adjudication is contrary to the clearly established Supreme Court case law. The adjudication is "contrary" only if either the reasoning or the result contradicts the

---

[9] Unless otherwise noted, references to *Williams* are to the majority holding, written by Justice Stevens for the Court (joined by Justices O'Connor, Kennedy, Souter, Ginsburg, and Breyer) in parts I, III, and IV of the opinion (529 U.S. at 367-75, 390-99); and Justice O'Connor for the Court (joined by Justices Rehnquist, Kennedy, Thomas, and—except as to the footnote—Scalia) in part II (529 U.S. at 403-13). The opinion of Justice Stevens in Part II was joined by Justices Souter, Ginsburg, and Breyer.

relevant Supreme Court cases. *See Early v. Packer*, 537 U.S. 3, 8 (2002) ("Avoiding th[e] pitfalls [of § 2254(d)(1)] does not require citation to our cases—indeed, it does not even require awareness of our cases, so long as neither the reasoning nor the result of the state-court decision contradicts them.").

If the "contrary to" clause is not satisfied, the federal court determines whether the state court "unreasonably applied" the governing legal principle set forth in the Supreme Court's cases. The federal court defers to the state court's reasoning unless the state court's application of the legal principle was "objectively unreasonable" in light of the record before the state court. *See Williams*, 529 U.S. at 409; *Holland v. Jackson*, 542 U.S. 649, 652 (2004). "[E]ven a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Harrington v. Richter*, 562 U.S. 86, 102 (2011).

Section 2254(d) also allows habeas relief for a claim adjudicated on the merits in state court where that adjudication "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). The "unreasonable determination of the facts" standard is implicated only to the extent the validity of the state court's ultimate conclusion is premised on unreasonable fact finding. *See Gill v. Mecusker*, 633 F.3d 1272, 1292 (11th Cir. 2011). As with the "unreasonable application"

clause, the federal court applies an objective test. *See Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003) (holding that a state court decision based on a factual determination "will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state court proceeding."). "The question under AEDPA is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable – a substantially higher threshold." *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007) (citing *Williams*, 529 U.S. at 410). AEDPA also requires federal courts to "presume the correctness of state courts' factual findings unless applicants rebut this presumption with 'clear and convincing evidence.'" *Landrigan*, 550 U.S. at 473-74 (quoting 28 U.S.C. § 2254(e)(1)).

The Supreme Court has often emphasized that a state prisoner's burden under § 2254(d) is "difficult to meet, . . . because it was meant to be." *Richter*, 562 U.S. at 102. The Court elaborated:

> As amended by AEDPA, § 2254(d) stops short of imposing a complete bar on federal-court relitigation of claims already rejected in state proceedings. *Cf. Felker v. Turpin*, 518 U.S. 651, 664, 116 S. Ct. 2333, 135 L.Ed.2d 827 (1996) (discussing AEDPA's "modified res judicata rule" under § 2244). It preserves authority to issue the writ in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with this Court's precedents. It goes no further. Section 2254(d) reflects the view that habeas corpus is a "guard against extreme malfunctions in the state criminal justice systems," not a substitute for ordinary error correction through appeal. *Jackson v.*

> *Virginia*, 443 U.S. 307, 332, n. 5, 99 S. Ct. 2781, 61 L. Ed. 2d 560
> (1979) (Stevens, J., concurring in judgment). As a condition for
> obtaining habeas corpus from a federal court, a state prisoner must
> show that the state court's ruling on the claim being presented in federal
> court was so lacking in justification that there was an error well
> understood and comprehended in existing law beyond any possibility
> for fairminded disagreement.

*Richter*, 562 U.S. at 102-03 (emphasis added).

A federal court may conduct an independent review of the merits of a petitioner's claim only if it first finds that the petitioner satisfied § 2254(d). *See Panetti v. Quarterman*, 551 U.S. 930, 954 (2007). Even then, the writ will not issue unless the petitioner shows that he is in custody "in violation of the Constitution or laws and treaties of the United States." 28 U.S.C. § 2254(a).

### 2. *Federal Law Governing Claims of Ineffective Assistance of Counsel*

The Supreme Court follows a two-pronged test for evaluating claims of ineffective assistance of counsel. *See Strickland v. Washington*, 466 U.S. 668 (1984). The petitioner must show (1) his counsel's performance was constitutionally deficient, and (2) the deficient performance prejudiced him. *See id.* at 687. "First, petitioner must show that 'counsel's representation fell below an objective standard of reasonableness.' Second, petitioner must show that 'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding

would have been different.'" *Darden v. Wainwright*, 477 U.S. 168, 184 (1986) (quoting *Strickland*, 466 U.S. at 694).

The inquiry under *Strickland*'s performance prong is "whether counsel's assistance was reasonable considering all the circumstances." *Strickland*, 466 U.S. at 688. "Judicial scrutiny of counsel's performance must be highly deferential," and courts should make every effort to "eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Id.* at 689. Trial counsel is "strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id.* at 690. The burden to overcome that presumption and show that counsel's performance was deficient "rests squarely on the defendant." *Burt v. Titlow*, 571 U.S. 12, 22-23 (2013); *Cullen v. Pinholster*, 563 U.S. 170, 189 (2011) ("To overcome that presumption, a defendant must show that counsel failed to act reasonably considering all the circumstances." (quotation marks and alterations omitted)); *see also Chandler v. United States*, 218 F.3d 1305, 1315 (11th Cir. 2000) ("[B]ecause counsel's conduct is presumed reasonable, for a petitioner to show that the conduct was unreasonable, a petitioner must establish that no competent counsel would have taken the action that his counsel did take."). "Because of this burden, when the evidence is unclear

or counsel cannot recall specifics about his actions due to the passage of time and faded memory, [courts] presume counsel performed reasonably and exercised reasonable professional judgment." *Blankenship v. Hall*, 542 F.3d 1253, 1274 (11th Cir. 2008) (citations omitted).

*Strickland*'s prejudice prong requires a defendant to establish a "reasonable probability" of a different trial outcome. *See Strickland*, 466 U.S. at 694. A reasonable probability is one that sufficiently undermines confidence in the outcome. *Id.* "The likelihood of a different result must be substantial, not just conceivable." *Richter*, 562 U.S. at 112.

When a district court considers a habeas petition, the state court's findings of historical facts in the course of evaluating an ineffectiveness claim are subject to the presumption of correctness, while the performance and prejudice components are mixed questions of law and fact. *See Strickland*, 466 U.S. at 698. "Surmounting *Strickland*'s high bar is never an easy task." *Padilla v. Kentucky*, 559 U.S. 356, 371 (2010). "Establishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is all the more difficult." *Richter*, 562 U.S. at 105 (citations omitted). The Supreme Court explained:

> The standards created by *Strickland* and § 2254(d) are both "highly deferential," and when the two apply in tandem, review is "doubly" so. The *Strickland* standard is a general one, so the range of reasonable applications is substantial. Federal habeas courts must guard

against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d). When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland's* deferential standard.

*Id.* (citations omitted).

## B.    Discussion

### Ground Two        "Ineffective assistance of counsel due to trial counsel failing to identify, call or prepare witnesses; violation of Sixth and Fourteenth Amendment rights." (Doc. 1 at 6).

Reese claims that trial counsel was ineffective for failing to call an alibi witness—Lashay McKelvey. Reese alleges that McKelvey "could have attested to Petitioner's whereabouts the night in question." (Doc. 1 at 6-6A).

### 1.    *State Court's Decision*

Reese presented this claim to the state courts as "Ground One" of her Rule 3.850 motion. (Ex. 10 at 3-5). There, Reese alleged that McKelvey would have testified that on January 15, 2013, Reese "was physically with Lashay Mckelvey during that entire day." (*Id*. at 3).

The state circuit court denied relief as follows:

Defendant alleges that counsel was ineffective for failing to call Lashay McKelvey as an alibi witness. Defendant's claim is refuted by the record. During the Court's colloquy with the Defendant, she was specifically asked if there were any witnesses or other individuals that she asked her attorney to investigate and/or call on her behalf that he

refused to investigate or call. Defendant answered, "no" (Trial Transcript ("TT"), pp. 338-339, attached).

Additionally, a defendant claiming ineffectiveness based on counsel's failure to interview and call witnesses is not entitled to an evidentiary hearing where the trial court's colloquy demonstrates that the defendant did not want other witnesses called. *Terrell v. State*, 9 So. 3d 1284, 1288 (Fla. 4th DCA 2009). Defendant has not demonstrated deficient performance or prejudice. Ground One is denied.

(Ex. 15 at 2).

On appeal, the First DCA identified *Strickland* as the controlling legal standard, explaining:

To prove a claim of ineffective assistance of counsel, the defendant must establish that (1) defense counsel's performance was deficient and (2) the deficient performance prejudiced the defendant. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). To establish deficient performance, the defendant must overcome the strong presumption that counsel's conduct was reasonable and show that the conduct fell below an objective standard of reasonableness based on prevailing professional standards. *Id*. at 688-89, 104 S. Ct. 2052; *see also id*. at 687, 104 S. Ct. 2052 ("[The deficient performance prong] requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed by the Sixth Amendment."). To establish prejudice, the defendant must show a reasonable probability—i.e., a probability sufficient to undermine confidence in the outcome—that the result of the proceeding would have been different but for counsel's unprofessional errors. *Id*. at 694, 104 S. Ct. 2052; *see also id.* at 687, 104 S. Ct. 2052 ("[The prejudice prong] requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.").

*Reese*, 274 So. 3d at 529 (copy at Ex. 20 at 2-3). The First DCA affirmed the denial of relief on this particular claim, stating: "We fully agree with the trial court's analysis of claims 1, 3, 6 and 7, and we affirm the denial of those claims without further comment." (Ex. 20 at 2-3). The First DCA's decision is an "adjudication on the merits" of Reese's claim, and, therefore, is entitled to deference under § 2254(d).

### 2.    *Reese's Claim Does Not Warrant Habeas Relief*

The First DCA's decision is not "contrary to" clearly established Federal law because the state court identified and applied the two-part *Strickland* standard. *See Williams*, 529 U.S. at 405-06 (interpreting § 2254(d)(1)). To obtain habeas relief, Reese must show that the First DCA's application of the *Strickland* standard was unreasonable.

In reviewing the state court's decision, this court defers to the state court's factual findings because they are amply supported by the record and because Reese has not rebutted them with clear and convincing evidence to the contrary. *Consalvo v. Sec'y for Dep't of Corr.*, 664 F.3d 842, 845 (11th Cir. 2011) ("AEDPA affords a presumption of correctness to a factual determination made by a state court; the habeas petitioner has the burden of overcoming the presumption of correctness by clear and convincing evidence.") (citing 28 U.S.C. § 2254(e)).

At trial, the trial court placed Reese under oath and conducted the following

colloquy:

> THE COURT:    And you are still under oath. I placed you under oath once before. As you sit there, are you totally satisfied with the way your lawyer has represented you in this case?

> THE DEFENDANT:    Yes, sir.

> THE COURT:    Did he present the defense on your behalf that you feel like he should have presented?

> THE DEFENDANT:    Yes, sir.

> THE COURT:    Did he interview witnesses and investigate this case the way you feel like he should have interviewed and investigated?

> THE DEFENDANT:    Yes, sir.

> THE COURT:    Did he cross-examine witnesses, argue on your behalf, and otherwise do everything during the course of the trial that you feel like a good lawyer should have done?

> THE DEFENDANT:    Yes, sir.

> THE COURT:    And were there any plea offers made, Mr. Hale?

> MR. HALE [Prosecutor]:    No, sir.

> THE COURT:    All right. So there's no question about any plea offers being conveyed.

> Were there any witnesses that—or other individuals that you asked Mr. Harrison to investigate and call on your behalf that he refused to investigate or call?

> THE DEFENDANT:    No, sir.

Page 26 of 48

(Ex. 5 at 123-24 in ECF (Tr. of Trial at 338-39)).

Based on Reese's sworn assertions at trial—that there were no witnesses defense counsel could have called on her behalf—the First DCA reasonably concluded that counsel was not ineffective for failing to present testimony from McKelvey. *See Blackledge v. Allison*, 431 U.S. 63, 74 (1977) ("Solemn declarations in open court carry a strong presumption of verity."); *Chandler*, 218 F.3d at 1324 ("The reasonableness of a trial counsel's acts . . . depends critically upon what information the client communicated to counsel."). Reese is not entitled to habeas relief on Ground Two.

**Ground Three**    **"Trial counsel was ineffective for not conducting a reasonable investigation into mitigation; a violation of Petitioner's 6th and 14th Amendment rights." (Doc. 1 at 8).**

Reese claims that trial counsel was ineffective for failing to investigate and present "mitigation evidence." (Doc. 1 at 8-8A). Reese does not specify what mitigation evidence was available.

### 1.    *State Court's Decision*

Reese presented this claim to the state courts as "Ground Two" of her Rule 3.850 motion. (Ex. 10 at 6-7). The state circuit court denied relief for these reasons:

> Defendant alleges that counsel was ineffective for failing to investigate and present available mitigating evidence of her social and

Page 27 of 48

family history to the jury. Mitigating evidence is not admissible at trial, only at sentencing. Additionally, the Court conducted a thorough colloquy with the Defendant concerning whether her attorney interviewed witnesses and investigated the case the way she felt like he should have (TT, pp. 338-339, attached). Defendant has not demonstrated deficient performance or prejudice. Therefore, Ground Two is denied.

(Ex. 15 at 2).

On appeal, the First DCA identified *Strickland* as the controlling legal standard and affirmed for the following reasons:

> In claim 2, Reese alleged that her trial counsel was ineffective for not presenting mitigating evidence *at trial*. The trial court correctly found this claim to be refuted by the record (based on a colloquy between the court and Reese at trial) and legally insufficient (because "[m]itigating evidence is not admissible at trial, only at sentencing").
>
> In her motion for rehearing, Reese clarified that this claim also alleged that her counsel was ineffective for not presenting mitigating evidence *at sentencing*. Even with this clarification, the claim was properly denied because Reese cannot show prejudice since the trial court was *required* to impose a life sentence for the burglary under the PRR statute irrespective of any mitigating evidence that might have been presented. *See Ellington v. State*, 96 So. 3d 1131, 1131-32 (Fla. 1st DCA 2012) ("It is well-settled that, once the State proves by a preponderance of the evidence that a defendant qualifies as a [PRR], the trial court must sentence the defendant in accordance with the provisions of section 775.082(9), Florida Statutes. A trial court does not have discretion to depart from the sentence mandated by section 775.082(9), and the refusal to impose the mandatory minimum sentence is error as a matter of law.") (citations omitted).

*Reese*, 274 So. 3d at 529 (copy at Ex. 20 at 3).

The First DCA's decision is an "adjudication on the merits" of Reese's claim, and, therefore, is entitled to deference under § 2254(d).

### 2.    *Reese's Claim Does Not Warrant Habeas Relief*

The "contrary to" clause of § 2254(d)(1) is not implicated because the First DCA identified and applied the *Strickland* standard. Reese must establish that the First DCA's application of the *Strickland* standard was objectively unreasonable. Reese fails to make that showing.

The First DCA concluded, as a matter of state law, that (1) mitigating evidence is not admissible at trial and (2) the trial court did not have discretion to impose any sentence other than a life sentence due to Florida's PRR statute. This court must defer to the state court's determination of these state-law issues. "It is a 'fundamental principle that state courts are the final arbiters of state law, and federal habeas courts should not second-guess them on such matters.'" *Herring v. Sec'y, Dep't of Corr.*, 397 F.3d 1338, 1355 (11th Cir. 2005) (quoting *Agan v. Vaughn*, 119 F.3d 1538, 1549 (11th Cir. 1997)).

The First DCA's conclusion—that Florida law did not allow Reese's "mitigation" evidence to be considered at trial or sentencing—means that counsel's failure to present the evidence was not deficient and did not cause prejudice. *See Callahan v. Campbell*, 427 F.3d 897, 932 (11th Cir. 2005) (holding that counsel was

Page 29 of 48

not ineffective for failing to attempt to exclude particular evidence under state law; the state court concluded, as a matter of state law, that the evidence was admissible and that an objection would have been overruled; the federal habeas court was required to defer to those state-law determinations); *Herring*, 397 F.3d at 1355 (same).

The state court's rejection of Reese's ineffective assistance claim was a reasonable application of the *Strickland* standard. *See Pinkney v. Sec'y, DOC*, 876 F.3d 1290, 1297 (11th Cir. 2017) ("[A]n attorney will not be held to have performed deficiently for failing to perform a futile act, one that would not have gotten his client any relief."). Reese is not entitled to habeas relief on Ground Three.

<u>**Ground Four**</u>    **<u>"Trial counsel was ineffective for not impeaching State witness Korshan Williams; a violation of Petitioner's 6th and 14th Amendment rights." (Doc. 1 at 10).</u>**

Reese claims that trial counsel was ineffective for failing to impeach co-defendant Williams's credibility. (Doc. 1 at 10-10A). Reese also faults counsel for failing to move to strike Williams's testimony "so that any testimony provided by the witness could not be considered during deliberations." (*Id*. at 10A).

### 1.    *State Court's Decision*

Reese presented this claim to the state courts as "Ground Three" of her Rule 3.850 motion. (Ex. 10 at 8-10). The state circuit court denied relief for these reasons:

Defendant alleges that counsel was ineffective for failing to impeach Korshan Williams' testimony. Defendant's claim is refuted by the record. During cross examination, trial counsel called Mr. Williams' credibility into question by highlighting his criminal history as well as his prior inconsistent statements to law enforcement (TT, p. 153-170, attached).

Additionally, the Court conducted a thorough colloquy with the Defendant specifically asking, among other things, if she felt that her attorney cross examined witnesses like a good lawyer should; she answered "Yes" (TT, pp. 338-339, attached). Defendant has not demonstrated deficient performance or prejudice. Ground Three is denied.

(Ex. 15 at 2-3).

On appeal, the First DCA identified *Strickland* as the controlling legal standard and affirmed the denial of relief as follows: "We fully agree with the trial court's analysis of claims 1, 3, 6 and 7, and we affirm the denial of those claims without further comment." *Reese*, 274 So. 3d at 529 (copy at Ex. 20 at 2-3).

The First DCA's decision is an "adjudication on the merits" of Reese's claim, and, therefore, is entitled to deference under § 2254(d).

## 2.     *Reese's Claim Does Not Warrant Habeas Relief*

The First DCA's rejection of Reese's claim was not contrary to clearly established federal law because the court identified and applied the *Strickland* standard. In reviewing the reasonableness of the First DCA's decision, this court defers to the state court's factual findings because they are amply supported by the

trial transcript and because Reese has not rebutted them with clear and convincing evidence to the contrary. *Consalvo*, 664 F.3d at 845.

During cross-examination of Williams and in closing argument, trial counsel attempted to impeach Williams's credibility by emphasizing his prior felony convictions, his inconsistent statements to law enforcement, his inconsistent trial testimony, and his pending criminal charges. (Ex. 4 at 25-42 in ECF (cross-examination); Ex. 5 at 46-62 in ECF (closing argument)). The state court reasonably concluded that counsel's performance in this regard was objectively reasonable.

Reese now asserts that counsel also should have *moved to strike* Williams's direct testimony for lack of credibility. This argument conflates credibility with competence and confuses the roles of the trial court and jury. Williams's motive to lie and prior inconsistent statements go to the credibility and weight to be given to his testimony, not its admissibility (i.e., Williams's competence as a witness). *See Carter v. State*, 560 So. 2d 1166, 1168 (Fla. 1990) (holding that the issue of a co-defendant's credibility is an issue for the jury); *Smith v. State*, 507 So. 2d 788, 790 (Fla. 1st Dist. Ct. App. 1987) ("An accomplice is competent to testify as a witness. . . . The credibility of an accomplice and the weight to be given his testimony is a matter for the jury."); *Darby v. State*, 216 So. 2d 29, 30 (Fla. 3d Dist. Ct. App. 1968)

("The credibility of a witness lies exclusively within the province of the jury."). The impeachment evidence did not provide a basis to exclude Williams's testimony.

The state court's rejection of Reese's claim was consistent with the *Strickland* standard. Reese is not entitled to habeas relief on Ground Four.

| | |
|---|---|
| **<u>Ground Five</u>** | **<u>"Ineffective assistance of counsel for not making the jury aware of the victim's motive to provide testimony that contradicted the testimony given to 9-1-1 dispatcher and investigating detectives; violating the Petitioner's Sixth and Fourteenth Amendment rights."</u> (Doc. 1 at 11A).** |

Reese claims that trial counsel was ineffective for failing to make the jury aware that Doytier was facing criminal charges for possession of marijuana and that he initially reported to police that both of his assailants were male. (Doc. 1 at 11A).

### 1. *State Court's Decision*

Reese presented this claim to the state courts as "Ground Four" of her Rule 3.850 motion. (Ex. 10 at 11-13). The state circuit court denied relief for these reasons:

> Defendant alleges that counsel was ineffective for failing to inform the jury that the victim was facing drug charges which gave him a motive for providing testimony contradictory to his prior statements to law enforcement. A party may attack the credibility of a witness with evidence of a conviction of a crime as provided under Florida Rule of Evidence 90.610. Accordingly, trial counsel was prohibited from discussing the victim's criminal charges. Defendant has not demonstrated deficient performance or prejudice. Accordingly, Ground Four is denied.

(Ex. 15 at 3).

On appeal, the First DCA identified *Strickland* as the controlling legal standard and affirmed the denial of relief for the following reasons:

> In claim 4, Reese alleged that her trial counsel was ineffective for not asking the victim about his pending criminal charges to show that he had a motive to testify that his attacker was a woman (Reese) as the State claimed, and not a man as he originally told the police. The trial court denied this claim, concluding that counsel could not have attacked the victim's credibility with the pending charges.

> Contrary to the trial court's reasoning, "when charges are pending against a prosecution witness at the time he testifies, the defense is entitled to bring this fact to the jury's attention to show bias, motive or self-interest." *Larkins v. State*, 655 So. 2d 95, 99 (Fla. 1995) (quoting *Torres-Arboledo v. State*, 524 So. 2d 403, 408 (Fla. 1988)). However, even if counsel was deficient for not asking the victim about his pending charges, this claim was properly denied because Reese cannot establish prejudice.

> Although trial counsel did not impeach the victim with his pending charges, counsel extensively cross-examined the victim about his drug use at the time of the offense (he admitted to smoking marijuana the night before the attack) as well as his original description of his attacker as a man (he explained that he mistook the attacker for a man because she was smaller than the co-defendant and was wearing men's clothing), and counsel emphasized the victim's credibility issues during closing argument. Additionally, counsel made the jury aware of the victim's pending charges by eliciting testimony from a police officer about the victim's arrest for drug offenses based on evidence found during the officer's investigation of this case, and counsel used this fact in closing argument to further attack the victim's credibility.FN2 Under these circumstances, Reese cannot show that the outcome of the case would have been any different had trial counsel asked the victim about his pending charges.

Page 34 of 48

FN2  Specifically, counsel argued:

> Look at [the victim's] situation. [He] is a drug dealer. He's got marijuana not just not just in his possession, he's got it up in his apartment and he sells it.

> In fact, [the police] charged him with possession of contraband for the purpose of sale. He's a defendant. That case is still pending. Look what he's doing. [He] is doing the same thing as [the co-defendant]. He's trying to line up with the State, get his story where it kind of makes the State's case against [Reese] easier. . . .

> * * *

> [The victim] feels like he can come in here and get out of the mess that he's in to deal with these pending charges, to stay out of jail or state prison, if he gets his story straight that it matches up with the prosecution in this case, which is built almost entirely . . . on the testimony of [the co-defendant].

*Reese*, 274 So. 3d at 529-30, 530 n.2 (copy at Ex. 20 at 3-4).

The First DCA's decision is an "adjudication on the merits" of Reese's claim, and, therefore, is entitled to deference under § 2254(d).

## 2.    *Reese's Claim Does Not Warrant Habeas Relief*

The First DCA's rejection of Reese's claim was not contrary to clearly established federal law because the court identified and applied the *Strickland* standard. In reviewing the reasonableness of the First DCA's application of the *Strickland* standard, this court defers to the state court's factual findings because

they are amply supported by the trial transcript and because Reese has not rebutted them with clear and convincing evidence to the contrary. *Consalvo*, 664 F.3d at 845.

Trial counsel made the jury aware of Doytier's inconsistent statements concerning the gender of the second assailant and of Doytier's pending criminal charges for possession of marijuana with intent to sell. (*See* Ex. 3 at 51-57 in ECF (cross examination of Doytier); Ex. 3 at 74-76 in ECF (cross examination of Officer Black); Ex. 4 at 68 in ECF (cross examination of Officer Newberry); Ex. 5 at 52-56 in ECF (closing argument)). The prosecutor, too, referenced Doytier's pending drug charges during closing argument. (Ex. 5 at 74 in ECF).

On this record, a fairminded jurist could agree with the First DCA's conclusion that Reese failed to establish that she was prejudiced by counsel's failure to question Doytier himself about his pending criminal charges, when counsel's cross-examination of other witnesses and the parties' closing arguments highlighted that same information. Reese is not entitled to habeas relief on Ground Five.

| **Ground Six** | **"Ineffective assistance of counsel for not challenging Double Jeopardy violation; violating the Petitioner's Sixth and Fourteenth Amendment rights." (Doc. 1 at 11C).** |

Reese claims that trial counsel was ineffective for failing to challenge her convictions for Aggravated Battery (Count V) and Battery (Count VI) on the ground

that they violate the Double Jeopardy Clause. In support, Reese alleges that both charges involved the same victim—Mr. Doytier. (Doc. 1 at 11C).

### 1.   *State Court's Decision*

Reese presented this claim to the state courts as "Ground Five" of her Rule 3.850 motion. (Ex. 10 at 14). The state circuit court denied relief for these reasons:

> Defendant alleges that counsel was ineffective for not challenging what she asserts is a double jeopardy violation. Defendant argues she was punished twice for the same offense in violation of double jeopardy because aggravated battery with a firearm and aggravated battery with a deadly weapon are defined under the same statute and require the same elements. Defendant's claims are meritless.
>
> She was convicted of aggravated battery with a firearm and battery (Amended Judgment & Sentence, attached). Aggravated battery with a firearm and battery are defined under different statutes and require different elements, so there is no double jeopardy violation. <u>See</u> § 784.045, Fla. Stat. (2013); § 784.03, Fla. Stat. (2013). Defendant has not demonstrated deficient performance or prejudice. Ground Five is denied.

(Ex. 15 at 3).

On appeal, the First DCA identified *Strickland* as the controlling legal standard and affirmed the denial of relief based on different reasons:

> In claim 5, Reese alleged that her trial counsel was ineffective for failing to argue that her convictions for aggravated battery with a firearm (count V) and battery (count VI) were barred by double jeopardy. The trial court denied this claim as "meritless" because the offenses contained different elements. We agree that this claim is meritless, but for different reasons.

Page 37 of 48

The record reflects that counts V and VI were based on *different* victims: count V was based on the victim shot by Reese whereas count VI was based on the victim attacked by her co-defendant for which Reese was convicted as a principal. It is axiomatic that multiple battery convictions—whether simple or aggravated—are legally permissible where multiple victims are battered. *See Williams v. State*, 106 So. 3d 964, 966 (Fla. 3d DCA 2013). Accordingly, Reese cannot show deficient performance in her counsel's failure to argue that her dual battery convictions violate double jeopardy. *See Teffeteller v. Dugger*, 734 So. 2d 1009, 1023 (Fla. 1999) ("Trial counsel cannot be deemed ineffective for failing to raise meritless claims. . . .").

*Reese*, 274 So. 3d at 530-31 (copy at Ex. 20 at 5).

The First DCA's decision is an "adjudication on the merits" of Reese's claim, and, therefore, is entitled to deference under § 2254(d).

### 2.    *Reese's Claim Does Not Warrant Habeas Relief*

The First DCA's rejection of Reese's claim was not contrary to and did not involve an unreasonable application of the *Strickland* standard. The record establishes that Reese was charged with, convicted of and sentenced for two separate batteries on two separate victims during the burglary. (Ex. 1 (Information); Ex. 5 at 104-06 in ECF (jury instructions)). The aggravated battery comprising Count V was Reese's battery of Doytier. (*Id*.). The battery comprising Count VI was Williams's battery of Bowers, for which Reese was liable as a principal. (*Id*.).

The First DCA determined, as a matter of state law, that Florida allows a defendant to be convicted and sentenced separately and consecutively for each

distinct offense committed within a single criminal episode. *Williams v. State*, 106 So. 3d 964, 966 (Fla. 3d Dist. Ct. App. 2013) (holding that defendant's convictions and sentences for two separate aggravated batteries committed against two separate victims during a single armed robbery did not violate double jeopardy; explaining that: "Pursuant to section 775.021(4), Florida Statutes (2008), a defendant may be convicted and sentenced separately and consecutively for each distinct offense committed within a single criminal episode."). This court defers to the First DCA's determination of state law.

Because Reese's proposed double jeopardy argument would have failed, counsel was not ineffective for failing to raise it. *Pinkney*, 876 F.3d at 1297; *Freeman v. Attorney Gen., Fla.*, 536 F.3d 1225, 1233 (11th Cir. 2008) ("A lawyer cannot be deficient for failing to raise a meritless claim."); *Brownlee v. Haley*, 306 F.3d 1043, 1066 (11th Cir. 2002) (counsel was not ineffective for failing to raise issues clearly lacking in merit); *Bolender v. Singletary*, 16 F.3d 1547, 1573 (11th Cir. 1994) ("[I]t is axiomatic that the failure to raise nonmeritorious issues does not constitute ineffective assistance."). Reese is not entitled to habeas relief on Ground Six.

**Ground Seven**    **"Counsel was ineffective for failing to ask for a mistrial due to a sleeping juror; violating 6th, 14th Amendment." (Doc. 1 at 11E).**

Reese claims that trial counsel was ineffective for failing to move for a mistrial due to a sleeping juror. (Doc. 1 at 11E).

### 1. *State Court's Decision*

Reese presented this claim to the state courts as "Ground Six" of her Rule 3.850 motion. (Ex. 10 at 15). The state circuit court denied relief for these reasons:

> Defendant alleges that counsel was ineffective for failing to dismiss a sleeping juror. Defendant's claim is refuted by the record. During trial, the State brought to the Court's attention that Juror Number 3 was nodding off and the Court gave trial counsel and the Defendant a chance, during recess, to discuss whether they wanted that juror [replaced] with an alternative juror or proceed with Juror Number 3 (TT, pp. 302-304, attached). After returning from recess, the Court asked the defense how they wanted to handle the juror issue and trial counsel responded that they wanted to proceed with Juror Number 3 (Id.).

> Additionally, the Court made sure Defendant understood that she had the option of replacing Juror Number 3 with one of the alternate jurors if she felt Juror Number 3 had not been paying attention (Id.). Defendant confirmed the decision to proceed with Juror Number 3 was her own, but one which she made based on advice of counsel. (Id.). At the close of trial, Defendant again stated under oath that she decided to keep Juror Number 3 instead of substituting one of the alternative jurors (TT, p. 339, attached). Defendant has not demonstrated deficient performance or prejudice. Therefore, Ground Six is denied.

(Ex. 15 at 3-4).

The First DCA affirmed the denial of relief as follows: "We fully agree with the trial court's analysis of claims 1, 3, 6 and 7, and we affirm the denial of those claims without further comment." *Reese*, 274 So. 3d at 529 (copy at Ex. 20 at 2-3). The First DCA's decision is an "adjudication on the merits" of Reese's claim, and, therefore, is entitled to deference under § 2254(d).

### 2.    *Reese's Claim Does Not Warrant Habeas Relief*

The First DCA's rejection of Reese's claim was not contrary to clearly established federal law because the court identified and applied the *Strickland* standard. In reviewing the reasonableness of the state court's application of the *Strickland* standard, this court defers to the state court's factual findings because they are amply supported by the trial transcript and because Reese has not rebutted them with clear and convincing evidence to the contrary. *Consalvo*, 664 F.3d at 845.

The trial court noticed Juror Number 3 nodding off during defense counsel's closing argument. (Ex. 5 at 48, 87 in ECF). The trial court asked counsel to pause and required the jurors to stand and stretch. (Ex. 5 at 48). At the close of all argument, the court gave the jury a break to move about and excused them from the courtroom. The prosecutor raised the issue of Juror No. 3 nodding off:

> MR. HALE [Prosecutor]: Judge, my concern was—and I'll leave it to the discretion of the Court and Mr. Harrison as far as what to do—I think Mr. Ang was, Juror No. 3, was much more attentive during our closing arguments—or, well, at least during the second part of my

argument. But there was some concern where, again, he looked like he was—

THE COURT:      He nodded. That's the reason I told everybody to stand up that one point in time because he was nodding. So if you all want to put him as the alternate and leave No. 7 or 8 on the jury, that will be fine. That's something you all can agree to.

MR. HALE: Yes, sir, and I have no problem keeping Mr. Ang. I just wanted to make sure that it was on the record that, you know, I did notice some nodding.

And, you know, it's certainly something for Mr. Harrison [Defense Counsel] to discuss with his client. You know, if they're fine keeping him, then it's not an issue. If they want him to be one of the alternates, then we'll just go down the line to the next person and they can be on the jury. But that's something we can talk about once we come back.

THE COURT:      Okay. Y'all talk about it and let me know.

. . . .

THE COURT:      All right. Mr. Harrison, what's your pleasure as far as the juror is concerned?

MR. HARRISON  Judge, we'd like to keep Mr. Ang.

THE COURT:      Okay, that's fine. And, Ms. Reese, you understand that our concern was that—

THE DEFENDANT:      Yes, sir.

THE COURT:      —on occasion it looked like he's been nodding off. I mean, he hasn't been sleeping, he's just been kind of nodding. And then he'd look back up and he would change his position. So I'm giving you the opportunity to substitute one of the two alternates for him if you believe that he has not been paying attention. I'm sure that Mr.

Harrison consulted with you and you have made the decision to keep him and not substitute one of the alternates for him; is that correct?

THE DEFENDANT:    Yes, sir.

THE COURT:    And you have made that decision with advice of counsel, but that's your decision?

THE DEFENDANT:    Yes, sir.

(Ex. 5 at 87-89 in ECF).

After the jury was escorted from the courtroom for deliberations, the court again questioned Reese about her decision to keep Juror No. 3:

THE COURT:    And I know that we've talked about Juror No. 3, Mr. Ang. Ang, yes. He nodded at times and occasionally I would make the jurors stand up and we'd take breaks and send them out and all. And I offered that if anyone thought that he had not been paying attention and had been sleeping, that I would substitute one of the alternate jurors in his place. We discussed that and you made the decision with your lawyer to keep him on the jury; is that correct?

THE DEFENDANT:    Yes, sir.

THE COURT:    And you are satisfied at this point with the six people that are out deliberating your case, that they properly listened to this case and that they are properly capable at this point of deciding this case?

THE DEFENDANT:    Yes, sir.

(Ex. 5 at 124 in ECF).

Given Reese's sworn assertions at trial, the state court reasonably concluded that counsel was not deficient for failing to remove Juror No. 3, whom Reese herself

Page 43 of 48

agreed should remain on the jury. Reese also has not shown that she was prejudiced by counsel's advice to keep Juror No. 3 instead of replacing him with an alternate. Reese is not entitled to habeas relief on Ground Seven.

**Ground Eight**      **"The cumulative effect of counsel's errors deems the Petitioner's trial and conviction fundamentally unfair and deprived Petition of her right to due process of law; violating the Petitioner's Fifth, Sixth and Fourteenth Amendment right." (Doc. 1 at 11G).**

Reese's final claim is that the cumulative effect of trial counsel's errors alleged in Grounds Two through Seven violated her Sixth Amendment rights. (Doc. 11G).

### 1.    *State Court's Decision*

Reese presented this claim to the state courts as "Ground Seven" of her Rule 3.850 motion. (Ex. 10 at 18). The state circuit court denied relief for these reasons:

> Defendant alleges that she is entitled to relief because of the cumulative effect of trial counsel's alleged deficient performance. Because there was no deficient performance or prejudice, Ground Seven is denied.

(Ex. 15 at 4). The First DCA summarily affirmed. *Reese*, 274 So. 3d at 529 (copy at Ex. 20 at 2-3).

### 2.    *Reese's Claim Does Not Warrant Habeas Relief*

The Eleventh Circuit has recognized that, based on the current state of Supreme Court precedent, a cumulative-error claim may not be cognizable on

federal habeas review. *See Morris v. Sec'y, Dep't of Corr.*, 677 F.3d 1117, 1132 & n.3 (11th Cir. 2012) ("We need not determine today whether, under the current state of Supreme Court precedent, cumulative error claims reviewed through the lens of AEDPA can ever succeed in showing that the state court's decision on the merits was contrary to or an unreasonable application of clearly established law."). Although the Supreme Court has not addressed the applicability of the cumulative-error doctrine in the context of ineffective-assistance-of-counsel claims, the Court has held that "there is generally no basis for finding a Sixth Amendment violation unless the accused can show how specific errors of counsel undermined the reliability of the finding of guilt." *United States v. Cronic*, 466 U.S. 648, 659 n.26 (1984) (citations omitted).

Reese has not shown that any error of trial counsel undermines the reliability of the jury's finding of guilt. In light of *Cronic* and the absence of Supreme Court precedent applying the cumulative error doctrine to claims of ineffective assistance of counsel, the state court's holding is not contrary to, or an unreasonable application of, clearly established federal law. Reese is not entitled to habeas relief on Ground Eight.

## IV.  CERTIFICATE OF APPEALABILITY IS NOT WARRANTED

Rule 11(a) of the Rules Governing Section 2254 Cases in the United States District Courts provides: "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." If a certificate is issued, "the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)." 28 U.S.C. § 2254 Rule 11(a). A timely notice of appeal must still be filed, even if the court issues a certificate of appealability. *See* 28 U.S.C. § 2254 Rule 11(b).

"[Section] 2253(c) permits the issuance of a COA only where a petitioner has made a 'substantial showing of the denial of a constitutional right.'" *Miller-El*, 537 U.S. at 336 (quoting 28 U.S.C. § 2253(c)). "At the COA stage, the only question is whether the applicant has shown that 'jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further.'" *Buck v. Davis*, 580 U.S. ___, 137 S. Ct. 759, 774 (2017) (quoting *Miller-El*, 537 U.S. at 327). "When the district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claim, a COA should issue when the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right *and*

that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (emphasis added). Here, Petitioner has not made the requisite demonstration. Accordingly, the court should deny a certificate of appealability in its final order.

The second sentence of Rule 11(a) provides: "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue." 28 U.S.C. § 2254 Rule 11(a). If there is an objection to this recommendation by either party, that party may bring such argument to the attention of the district judge in the objections permitted to this report and recommendation.

## V. CONCLUSION

For the reasons set forth above, the undersigned respectfully **RECOMMENDS** that:

1.  The petition for writ of habeas corpus (Doc. 1), challenging the judgment of conviction and sentence in *State of Florida v. Tamika S. Reese*, Leon County Circuit Court Case No. 2013-CF-2276, be **DENIED**.

2.  The District Court **DENY** a certificate of appealability.

3.  The clerk of court close this case file.

At Panama City, Florida, this <u>4th</u> day of March, 2021.

/s/ *Michael J. Frank*
**Michael J. Frank**
**United States Magistrate Judge**

## NOTICE TO THE PARTIES

**Objections to these proposed findings and recommendations must be filed within fourteen (14) days of the date of the Report and Recommendation. <u>Any different deadline that may appear on the electronic docket is for the court's internal use only and does not control.</u> An objecting party must serve a copy of the objections on all other parties. A party who fails to object to the magistrate judge's findings or recommendations contained in a report and recommendation waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions. *See* 11th Cir. R. 3-1; 28 U.S.C. § 636.**